IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                    No. CR 11-1669 JB

IRVING ENRIQUEZ and
OSMOND MARQUEZ-CORDOVA,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion for Review and Brief in Support of Appeal to the District Court for Detention and Denial of Bail by U.S. Magistrate, filed July 18, 2011 (Doc. 32)("Motion"); and (ii) the Defendant's Supplement to Defendant's Motion for Review and Brief in Support of Appeal to the District Court for Detention and Denial of Bail by U.S. Magistrate, filed August 17, 2011 (Doc. 51)("Supplement").  The Court held an evidentiary hearing on August 2, 2011.  The primary issue is whether the Court should vacate the Detention Order Pending Trial that the Honorable Lourdes A. Martinez, United States Magistrate Judge, entered on March 31, 2011.  See Doc. 9 ("Detention Order").  The Court denies Defendant Irving Enriquez condition of release pending sentencing, because Enriquez has not shown, by clear-and-convincing evidence, that he is not a flight risk.

## FACTUAL BACKGROUND

On Friday, March 18, 2011, in Doña Ana County, District of New Mexico, an undercover agent ("UCA") met with Enriquez to discuss the sale of firearms.  The UCA showed Enriquez photographs of the firearms that Enriquez had ordered to verify Enriquez's order.  Enriquez

confirmed that he had ordered twenty fully automatic, AK-47 type machine guns, ten 9mm Beretta pistols, and ten .308 caliber rifles.  The UCA made Enriquez aware that all twenty of the AK-47 type rifles were fully automatic machine guns.  Enriquez assured the UCA that was the type of firearm he wanted.

The UCA told Enriquez he would be able to deliver the entire order of firearms the following Friday, March 25, 2011.  The UCA also told Enriquez the transaction would take place at the Love's Truck Stop located on Interstate 10, just west of Las Cruces, New Mexico.  Enriquez agreed.  It was unclear at that time whether Enriquez would himself meet with the UCA to collect the firearms on March 25, 2011, or whether he would send a driver to collect the firearms on his behalf.

On Friday, March 25, 2011, in Doña Ana County Co-Defendant Osmond Marquez-Cordova, an illegal alien, arrived at the Love's Truck Stop and approached UCAs in a pre-arranged area of the truck stop parking lot.  The UCAs told Marquez-Cordova that they had the firearms, but that the firearms needed to be loaded into the truck that the UCAs were lending Marquez-Cordova to transport the firearms (the "UCA truck").  The UCAs opened the back of a second UCA vehicle and showed Marquez-Cordova numerous wooden crates, which they advised Marquez-Cordova contained the firearms.  Marquez-Cordova expressed fear that authorities were watching them, and told the UCAs to load all of the guns for him in the truck and to call him once all the firearms were loaded.  Marquez-Cordova entered his car and left for a short while.  Meanwhile, the UCAs proceeded to load forty firearms -- including twenty fully automatic, AK-47 type machine-guns, ten 9mm Beretta pistols, and ten .308 caliber rifles -- into the UCA truck.  After the UCAs loaded the firearms in the UCA truck, a UCA called Marquez-Cordova and told him that everything was loaded.

Soon thereafter, Marquez-Cordova returned to the UCAs' location at the truck stop.

-2-

Marquez-Cordova entered the UCA truck containing the forty firearms and left the truck stop driving the UCA truck.  Shortly afterwards, law enforcement agents took Marquez-Cordova into custody and recovered all forty firearms.

Marquez-Cordova admitted to being a Mexican citizen and that he was in the United States unlawfully.  Marquez-Cordova further admitted that he knew he was picking up firearms at the truck stop and that he expected to get paid at least $500.00 for doing so.  All forty firearms that Marquez-Cordova knowingly possessed had previously traveled in interstate or foreign commerce before March 25, 2011.

Enriquez was arrested soon after Marquez-Cordova.  Enriquez admitted to brokering the purchase of forty firearms, including twenty "cuernos de chivos" -- a common slang term used to refer to AK-47-style firearms.  Enriquez also admitted to sending Marquez-Cordova to pick up the firearms at the truck stop and to agreeing to pay him $500.00 for doing so.  Enriquez stated that he knew Marquez-Cordova did not "have papers" and that Marquez-Cordova is from Mexico.  Following his arrest, Enriquez also stated that the firearms were going to be sent to Mexico.

## PROCEDURAL BACKGROUND

On March 25, 2011, Enriquez was arrested and charged with Knowingly Possessing a Machine Gun, as defined by 26 U.S.C. § 5845(b).  The United States moved to detain Enriquez without bond.  See Government's Motion to Detain, filed March 31, 2011 (Doc. 4).  Pre-Trial Services ("PTS") Officer Sam Romero made a recommendation and report to Judge Martinez.  In the PTS report, Romero recommended release on a $10,000.00 cash or surety bond.  Judge Martinez held a detention hearing on March 31, 2011.  See Criminal Clerk's Minutes at 1 (March 31, 2011), filed March 31, 2011 (Doc. 8).  Judge Martinez granted the United States' motion, ordering Enriquez detained without bond.  See Detention Order at 2.  Judge Martinez found that there was

no condition or combination of conditions that would reasonably assure the appearance of Enriquez as required for the safety of the community; she found that there is a serious risk Enriquez would not appear.  See Detention Order at 2.  The Detention Order indicates that Judge Martinez found for detention based on a preponderance of evidence.  At the subsection of Alternative Findings (B) of the Detention Order, Judge Martinez found that Enriquez' detainment was approved because: "(1) There is a serious risk that the defendant will not appear.  (2) There is a serious risk that the defendant will endanger the safety of another person or the community."  Detention Order at 2.

On June 22, 2011, a grand jury returned an Indictment against Enriquez.  See Doc. 16.  The grand jury indicted Enriquez in Count 1 with Possession of a Machine Gun, in violation of 18 U.S.C. §§ 922(o), 924(a)(2), and Causing an Offense to Be Committed, in violation of 18 U.S.C. § 2(b); and in Count 2 with Aiding and Abetting an Illegal Alien's Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(5), 924(a)(2), and 18 U.S.C. § 2.  On July 1, 2011, Judge Martinez arraigned Enriquez.  See Clerk's Minutes of Arraignment, filed July 1, 2011 (Doc. 22).

Enriquez asks the Court to review Judge Martinez' detention order.  Pursuant to 18 U.S.C. §§ 3142 and 3145(b) and (c), Enriquez appeals the detention order and prays that the Court release him on reasonable bail pending trial.  On July 22, 2011, the United States filed its Response to Defendant's Motion for Review of Detention Order.  See Doc. 37 ("Response").  The United States opposes Enriquez' Motion, asserting that the Court should detain him pending trial.

On August 2, 2011, Enriquez entered a guilty plea to Count 1 of the Indictment.  See Plea Agreement, file August 2, 2011 (Doc. 45).  At the August 2, 2011 evidentiary hearing, the parties agreed that, because of Enriquez' plea, 18 U.S.C.A. § 3143(a)(1) controls whether the Court grants him condition of release.

At the August 2, 2011 evidentiary hearing, Enriquez proffered that he is not part of a drug

cartel.  He represented that he knows people who are in a drug cartel, but he does not associate with them.  He asserted that he would not flee to Mexico if the Court release him on conditions.

Enriquez' family appeared to show their support for him.  Enriquez' mother, mother-in-law, sister, aunt, cousins, nieces, and nephews appeared.  Some of these family members live in Mexico. Enriquez' mother and cousin offered their houses as a bond for Enriquez.  His mother also offered to serve as his custodian, and allow him to live with her in El Paso, Texas.  She stated that her house does not have a telephone, but that she has a cellular telephone.  She stated, however, that she would install a telephone for electronic monitoring.  Enriquez' mother further testified that the racetrack and stables their family owned in Mexico burned down and that she would not return to live in Mexico.  She testified that she had no criminal history, but on cross-examination, she admitted that she has been arrested for switching prices on items at a department store and stated the charges were dismissed.  The United States presented evidence that her charges have not been dismissed.[1]

Following the hearing, Enriquez filed his Supplement.  Enriquez states that his aunt, Olga Harres, proffered that she would be willing to act as the third-party custodian for Enriquez pending his sentencing.  She is employed at the Metropolitan Jail in Albuquerque, New Mexico.  On August 23, 2011, the United States filed its Response to Defendant's Supplement to Defendant's Motion for Review of Detention Order.  See Doc. 52.  The United States asserts that Harres' willingness to act as a third-party custodian is irrelevant to whether Enriquez should be detained pending sentencing and asserts that, moreover, it is unclear she is a suitable custodian.

## STANDARD OF REVIEW BY THE DISTRICT COURT

---

[1]Ms. Enriquez was granted pretrial diversion and so was never convicted of the crime; however, it is not until the conclusion of the diversionary program that the charges will be dismissed.  As of the date of the evidentiary hearing, August 2, 2011, Ms. Enriquez the charges were still pending.

"The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo." United States v. Cisneros, 328 F.3d 610, 616 n.1 (10th Cir. 2003).  "When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release." United States v. Rueben, 974 F.2d 580, 585-86 (5th Cir. 1992).  See United States v. Maull, 773 F.2d 1479, 1481 (8th Cir. 1985)(stating that a district court's review of magistrate judge's order setting bond was de novo).  "[I]t is within the district court's authority to review a magistrate's release or detention order sua sponte." United States v. Cisneros, 328 F.3d at 616 (citing United States v. Spilotro, 786 F.2d 808, 815 (8th Cir.1986)).

## LAW REGARDING PRETRIAL DETENTION

Pursuant to the Bail Reform Act, a defendant may be detained pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).  At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness by clear-and-convincing evidence.  See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d at 616.  To determine whether pretrial detention is warranted, the judicial officer must consider the statutory factors set forth in 18 U.S.C. § 3142(g):

> **(g) Factors to be considered.** -- The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
>
> > **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal

crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

**(2)** the weight of the evidence against the person;

**(3)** the history and characteristics of the person, including--

> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

**(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

## LAW REGARDING RELEASE PENDING SENTENCING

Post-conviction, a defendant no longer has a substantive constitutional right to bail pending sentencing. <u>Williamson v. United States</u>, 184 F.2d 280, 281 (2d Cir.1950) (Jackson, Circuit Justice); <u>United States v. Abuhamra</u>, 389 F.3d 309, 317 (2d Cir. 2004).  As the district court observed, the defendant "is no longer entitled to the presumption of innocence."  Accordingly, § 3143(a) places the burden on a defendant to demonstrate by clear-and-convincing evidence that he is not likely to flee or pose a danger to the safety of others or the community.

<u>United States v. Madoff</u>, 316 F. App'x 58, 59 (2d Cir. 2009).

Under 18 U.S.C. § 3143(a):

**Release or detention pending sentence. -- (1)** Except as provided in paragraph (2),

the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

18 U.S.C. § 3143(a)(1)(bold in original).[2]

--------

[2] Under 18 U.S.C. § 3143(a)(1) Enriquez has the burden of establishing, by clear-and-convincing evidence, that he is not likely to flee or pose a danger to the community.  18 U.S.C. § 3143(a)(2), which applies if the offense is a crime of violence, contains a stricter standard, requires that the Court find that there is a substantial likelihood of success on a motion for acquittal or new trial or that an attorney for the Government has recommended a sentence of no imprisonment as well as a finding that the person is unlikely to flee or pose a danger to the community.  The parties agreed at the hearing that the Court should decide whether to detain Enriquez pending sentencing under 18 U.S.C. § 3143(a)(1), because there is not clear authority that Possessing a Machine Gun, in violation of 18 U.S.C. §§ 922(o), is a crime of violence.  In United States v. Golding, 332 F.3d 838 (5th Cir. 2003), the United States Court of Appeals for the Fifth Circuit held:

> [A]n offense of unlawfully possessing a machine gun in violation of 18 U.S.C. § 922(o) is a "crime of violence" because it constitutes conduct that presents a serious risk of physical injury to another.  This risk is presented by the inherently dangerous nature of machine guns; a determination that is evidenced by Congress's decision to regulate the possession and transfer of this specific type of firearm."

332 F.3d at 840.  Similarly, the United States Court of Appeals for the Tenth Circuit stated in Sutherland v. Flemming, 229 F.3d 1164 (10th Cir. 2000)(table):

> The BOP's characterization of possession of a machine gun as a crime of violence is a reasonable interpretation of § 3621(e)(2)(B). . . .  In order to qualify as a violent crime, the underlying conviction need not involve the actual use of force or violence. Rather, it need only involve "a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(b).  Possession of a machine gun, by its very nature, involves a substantial risk of violence or force, see United States v. Amparo, 68 F.3d 1222, 1226 (9th Cir. 1995) (upholding jury instruction that possession of a sawed-off shotgun was a "crime of violence" under § 924(c)(3)(B)).

229 F.3d 1164, at *1.  Both of these decision, however, were issued before the Supreme Court of the United States' opinion in Begay v. United States, 128 S. Ct. 1581 (2008), which stated  that courts should apply a categorical approach in determining whether a criminal is a crime of violence,

## ANALYSIS

The Court concludes that Enriquez is a flight risk and will detain him pending sentencing. The Court finds that, based on the quantity and nature of firearms involved, on the strength of the United States' case, and on Enriquez' ties to Mexico, a preponderance of the evidence supports finding that Enriquez is a flight risk.  In light of Enriquez' circumstances, there are no conditions, nor a combination of conditions, that will adequately ensure the safety of the community and the presence of the defendant as required.  <u>See</u> 18 U.S.C. § 3142(g).  Accordingly, the Court affirms Judge Martinez' Order of Detention.  Because the United States has shown, by a preponderance of the evidence, that Enriquez is a flight risk, and Enriquez has not shown, by clear-and-convincing evidence that he is not a flight risk, and the Court will not release him on conditions pending sentencing.

## I.    THE COURT CONCLUDES THAT ENRIQUEZ IS A FLIGHT RISK.

The Court concludes, by a preponderance of the evidence, that Enriquez is a flight risk.  The Court therefore affirms Judge Martinez' detention order and denies Enriquez presentence conditions of release.  The United States argues that Enriquez  must be detained pending sentencing, because he has not shown, by clear-and-convincing evidence, that he is not a flight risk and a danger to the community.  The United States contends that it presents strong evidence supporting a conviction of the crimes with which Enriquez is charged.  The United States further contends that, given Enriquez'

---

under which courts "consider the offense generically, that is to say, [courts] examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion."  128 S.Ct. at 1584.  <u>See</u> <u>James v. United States</u>, 550 U.S. 192, 202 (2007)( "[W]e consider whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender.").  In accordance with the parties' agreement, the Court will decide whether to detain Enriquez under 18 U.S.C. § 3143(a)(1). If Enriquez cannot satisfy the burden under 18 U.S.C. § 3143(a)(1), he will not be able to satisfy the more stringent standard under § 3143(a)(2).

strong ties to Mexico and the nature of the crime, no condition or combination of conditions will adequately deter Enriquez' flight and ensure the community's safety.  Moreover, Enriquez has pled guilty to Count 1 of the Indictment, shifting the burden to him to show, by clear-and-convincing evidence, that he is not a flight risk or danger to the community.  Enriquez argues that he is not a flight risk or a danger to the community, and that there are conditions that will reasonably assure his appearance at trial.

Enriquez contends that he has strong ties to the community.  Much of his family lives in the United States and his family property in Mexico has burnt down.  Enriquez' mother testified that only one niece remains in Mexico but stated that even that niece is in the process of moving to the United States.  Enriquez asserts that he will not flee if the Court grants him conditions of release.

The Court will first consider whether Judge Martinez was correct to deny Enriquez pretrial conditions of release.  The Court concludes that the United States has shown, by a preponderance of the evidence, that Enriquez presents a risk of flight.   He has deep ties to Mexico, and has lived there in the past.  Given the amount of time Enriquez faces at sentencing -- approximately 70 months -- Enriquez has a strong incentive to flee.  The Court is not ready to say that the United States has shown, by clear-and-convincing evidence, that Enriquez is a danger to the community.  The Court concludes, however, no conditions that Enriquez proposes or that the Court knows to be available will adequately deter his flight.  It is a short trip to Mexico from Enriquez' mother's home and electronic monitoring provides the Court little comfort, Enriquez could be in Mexico before the Court knew he was leaving El Paso.[3]  Because the Court "finds that no condition or combination of

---

[3]Although Enriquez has proffered that his aunt in Albuquerque is willing to act as a third-party custodian for Enriquez pending his sentencing, Enriquez has not yet asked the United States Pretrial Services Office to make a formal suitability determination regarding his aunt. See Resp. to Def.'s Supplemental Mot. for Review of Detention Order (Doc. 52).  It is unclear whether Ms.

conditions will reasonably assure the appearance of [Enriquez] as required," 18 U.S.C. § 3142(e)(1), the Court affirms Judge Martinez' Order of Detention.

The Court will next consider whether Enriquez has shown, by clear-and-convincing evidence, that he is not a flight risk or danger to the community. Because the United States has shown, by a preponderance of the evidence, that Enriquez *is* a flight risk, it necessarily follows that he had not shown, by clear-and-convincing evidence, that he *is not* a flight right. The Court will therefore detain him pending sentencing.

### A.   THE NATURE AND CIRCUMSTANCES OF THE CRIME CHARGED DEMONSTRATE ENRIQUEZ IS A FLIGHT RISK.

The nature and circumstances of the crime charged support detention. Section 3142(g)(1) provides, in part:

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning . . . the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a . . . firearm . . . .

18 U.S.C. § 3142(g)(1). This case involves forty firearms, including twenty machine guns, and Enriquez pled guilty to Possessing a Machine Gun, in violation of 18 U.S.C. §§ 922(o).

Enriquez faces a substantial term of incarceration. Each crime with which Enriquez is charged carries serious penalties: up to ten years in jail, a $250,000.00 fine, up to three years supervised release, and a $100.00 special penalty assessment. See 18 U.S.C. §§ 922(g)(5), 922(o), 924(a)(2). See also 18 U.S.C. § 3584 (where multiple terms of imprisonment imposed, court authorized to impose terms of imprisonment to run consecutively). Regarding Judge Martinez'

_____

Harres would make a suitable third-party custodian, but this lack of information does not does not adequately mitigate the Court's concerns about Enriquez' likelihood of appearance.

order, "[t]he United States estimate[s] that Defendant Enriquez's guideline range, after trial, w[ould]

be 97-121 months incarceration." Response at 8 (citing U.S.S.G. § 2K2.1(a)(5), (b)(1)(C), (b)(5)).

The United States estimates Enriquez sentence, in light of his plea, to be at least 70 months.  Given

the serious sentence his is likely to receive, the fact that he was going to sell the firearms in Mexico

and the strength of his ties to Mexico, Enriquez is a flight risk. The Court therefore finds that this

factor counsels in favor of detaining Enriquez pending trial.

### B.    THE WEIGHT OF THE UNITED STATES' EVIDENCE AGAINST ENRIQUEZ SHOWS HE IS A FLIGHT RISK.

The weight of the United States' evidence against Enriquez favors detaining him.  "[T]he

weight of the evidence offered in support of [the charge against Enriquez] is significant," giving him

ample reason to flee if he is released.  United States v. Cisneros, 328 F.3d at 618 (recognizing that

the United States "need not offer all of its evidence" at the detention stage of the criminal

proceeding).  Enriquez entered a guilty plea to Count 1 of the Indictment.  Moreover, the United

States presents weighty evidence against Enriquez, independent of his plea.  A UCA met with

Enriquez to discuss the purchase of forty assault-style weapons.  The meeting was recorded.  Law

enforcement surveilled Enriquez's arrival and departure at the meeting location.  In response to the

UCA's question, Enriquez confirmed that he wanted the UCA to supply him with twenty fully

automatic, AK-47 type machine guns, ten .9mm Beretta pistols, and ten .308 caliber rifles.  Enriquez

and the UCA agreed that the transaction would take place at a truck stop located on Interstate 10,

west of Las Cruces, the following Friday.  The following Friday, March 25, 2011, Enriquez sent

Marquez-Cordova to Love's Truck Stop, which is on Interstate 10, west of Las Cruces.  Law

enforcement conducted surveillance on Marquez-Cordova as he met with two UCAs.  The meeting

was recorded.  Marquez-Cordova gave the UCAs the keys to his vehicle and drove out of the truck

stop while the UCA truck loaded with the forty firearms Enriquez had ordered, including the twenty machine guns.  Federal agents took Marquez-Cordova into custody and recovered all forty firearms. An aerial surveillance team videotaped the events of March 25, 2011.  Because Enriquez pled guilty to Count 1 of the Indictment, and because the proffered evidence demonstrates that the United States' case against Enriquez is formidable, the incentive to flee is great.  The Court finds that this factor weighs in favor of detention.

### C.    ENRIQUEZ' HISTORY AND CHARACTERISTICS EVINCE THAT HE IS A FLIGHT RISK.

Enriquez' "family ties, employment, financial resources, length of residence in the community, [and] community ties" support finding that he is a flight risk.   18 U.S.C. § 3142(g)(3)(A).  Some of his characteristics demonstrate ties to the community.  Enriquez is a United States citizen.  He has no criminal history.

Enriquez, however, also has strong ties to Mexico.  He traveled there frequently, with his border crossing records showing thirty-nine crossings since 2005, including twenty-nine crossings between February 2009 and January 2011.  Further, the PTS report evidences that Enriquez has family in Mexico, owns property in Mexico -- although Enriquez' mother testified it burnt down-- and has lived in Mexico for extended periods beginning when he was fifteen years old.  Enriquez' wife is from Mexico, although she recently received permission to lawfully enter the United States, and she has family members who continue to live in Mexico.  His mother is a legal permanent resident alien of the United States, but is also from Mexico.  Moreover, Enriquez resides in El Paso, Texas,  just minutes from the International Border with Mexico.  See United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003)(noting a defendant's "close family in Mexico . . . and that in the past [the defendant] has traveled to Juarez with a sister and other family members" weighed in favor of

detention).

The PTS report states that Enriquez indicated that he is a self-employed horse-trainer and car salesman, but identified no substantial employment history.  At the same time, Enriquez represented his monthly income to be between $3,200.00 and $4,000.00.  Enriquez reported that he and his family lived in a leased apartment and was uncertain whether he was on the deeds to his family's rental properties in Juarez, Mexico or in Albuquerque, New Mexico.  The PTS report demonstrates that Enriquez has ample resources to abscond and continue his life with his young family in Mexico.    Finally, the United States and the PTS report assert that federal agents investigating this case have reliable information that Enriquez is a Sinaloa Cartel[4] associate.  The Court therefore concludes that Enriquez' history and characteristics support finding that he is a flight risk.  The Court is concerned that Enriquez would flee and finds that the United States has shown by a preponderance of the evidence that Enriquez is a flight risk.

In sum, by a preponderance of the evidence, Enriquez is a flight risk given the serious penalties he faces, the strength of the United States' case, and Enriquez' strong ties to Mexico.  On balance, Enriquez' ties to the community appear insufficient to prevent his flight.  In light of the severity of the sentence he is facing and the strength of the United States' evidence, along with his ties to Mexico, Enriquez has significant reason to abscond and avoid incarceration.  Given the proximity to the border, the ease of transitioning back to a life in Mexico, and his strong ties there, the Court does not believe at this time that it can construct a set of conditions that would mitigate to acceptable levels Enriquez' risk of flight.  The Court therefore denies his Motion and affirms

---

[4]The Sinaloa Cartel is a Mexican drug cartel that smuggles tons of cocaine and other drugs into the United States for sale and distribution.  See United States v. Corona-Verbera, 509 F.3d 1105, 1110 (9th Cir. 2007).

Judge Martinez' order detaining him pending trial.

>    **D.    THE COURT DOES NOT FIND CLEAR-AND-CONVINCING EVIDENCE THAT ENRIQUEZ IS A DANGER TO THE COMMUNITY.**

While the Court finds evidence that Enriquez is a danger to the community, the Court is not ready to say the evidence is clear-and-convincing.  The United States presented evidence that Enriquez arranged the purchase of the firearms in a horse barn, obtained them at a truck stop off Interstate 10 via a courier, and intended to ship the firearms to Mexico.  Evidence thus shows that Enriquez brokered the purchase of forty firearms, including twenty machine guns, which were bound for Mexico under circumstances consistent with trafficking and cartel activity.  Enriquez asserts that his offense did not involve violence.

While the United States presents weighty evidence that Enriquez was trafficking weapons, it has not presented clear-and-convincing evidence that Enriquez continues to be a danger to the community pending sentencing.  Gun trafficking contributes to the violence that plagues many of our communities and that has devastated Mexico.  See United States v. Garcia, 635 F.3d 472, 476-77 (10th Cir. 2011)(affirming admission of expert testimony, including that the firearms the defendant "purchased -- high-powered handguns, semi-automatic rifles, and a .50 caliber rifle -- are the types of firearms Mexican drug cartels have been acquiring to control their drug routes, wage war against rival drug cartels, and fight the Mexican government" (emphasis added)); United States v. Haney, 264 F.3d 1161, 1169 (10th Cir. 2001)(recognizing that Congress's decision to enact 18 U.S.C. § 922(o) and ban the possession of machine guns in intrastate commerce is similar to its regulation of "other extremely dangerous devices such as biological weapons, nuclear material, and semiautomatic assault weapons" (citations omitted)).  While Enriquez' crime most likely poses more of a danger to Mexican communities than to the United States, the gun trade supports the drug trade

-15-

which threatens and is a danger to the United States .  There is not clear-and-convincing evidence, however, that Enriquez would deal weapons while awaiting trial.  Consequently, the Court does not find, on the record before it, clear-and-convincing evidence that Enriquez presents a danger to the community and relies instead on Enriquez being a flight risk in affirming Judge Martinez' Order of Detention.

## II.    THE COURT WILL DENY ENRIQUEZ PRESENTENCING CONDITIONS OF RELEASE.

Because the Court concludes that Judge Martinez correctly detained Enriquez pretrial, it follows that Enriquez cannot meet his burden of showing, by clear-and-convincing evidence, that he "is not likely to flee." 18 U.S.C. § 3143(a).[5]  On the day the Court held its evidentiary hearing on Enriquez' Motion, Enriquez pled guilty to Count 1 of the Indictment.  Consequently, Enriquez no longer seeks pretrial release, but presentencing release.  Under 18 U.S.C. § 3143(a):

> **Release or detention pending sentence. -- (1)** Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

18 U.S.C. § 3143(a)(bold in original).

> Post-conviction, a defendant no longer has a substantive constitutional right to bail pending sentencing.  Williamson v. United States, 184 F.2d 280, 281 (2d Cir.1950) (Jackson, Circuit Justice); United States v. Abuhamra, 389 F.3d 309, 317 (2d Cir. 2004).  As the district court observed, the defendant "is no longer entitled to the presumption of innocence."  Accordingly, § 3143(a) places the burden on a

---

[5]Because the Court concludes that Enriquez should be detained under 18 U.S.C. § 3143(a)(1), it need not resolve whether to apply the more stringent standard for crimes of violence found in 18 U.S.C. § 3143(a)(2).

defendant to demonstrate by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of others or the community.

United States v. Madoff, 316 F. App'x 58, 59 (2d Cir. 2009).  Because the Court the Court finds, by a preponderance of the evidence, that Enriquez is a flight risk, it therefore does not find that Enriquez has shown, by clear-and-convincing evidence, that he is not a flight risk.  The Court thus denies Enriquez presentencing conditions of release.

**IT IS ORDERED** that the Court grants in part and denies in part the Defendant's Motion for Review and Brief in Support of Appeal to the District Court for Detention and Denial of Bail by U.S. Magistrate, filed July 18, 2011 (Doc. 32). The Court grants Defendant Irving Enriquez review of the Magistrate Judge' Detention Order Pending Trial, filed March 31, 2011 (Doc. 9), but denies Enriquez conditions of release.  The Court affirms Honorable Lourdes A. Martinez, United States Magistrate Judge' Detention Order Pending Trial.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
   United States Attorney
Reeve L. Swainston
Andrea W. Hattan
Michael Nammar
   Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

   *Attorneys for the Plaintiff*


Ken Del Valle
El Paso, Texas

--and--

-17-

Francisco F. Macias
Law Offices of Francisco F. Macias
El Paso, Texas

*Attorneys for the Defendant*